Please be seated. Good morning everyone and welcome to the Ninth Circuit. This has been a nice week here in Phoenix and hopefully we can do this again. I want to thank our staff for making this possible. I also want to thank the hospitality of the District of Arizona. So we have five matters on calendar today. The first one Rueling v. Mobet has been submitted. We'll hear argument in a moment in Romero-Millan. A couple things for council to remember. First, keep track of your time. If you want to reserve time you can but it's on you to make sure you keep track of it. Second, we have three cases today with some similar issues and so I would just remind council that there are no bonus points for using all of your time. If you have made your points and we're kind of just sitting up here kind of looking at you and you don't have a lot more to say, it's okay to sit down. You don't have to use every second of your clock. It's up to you but it's not like we say, oh well he only used eight minutes so he loses. It's not how it works. And so with that we'll go ahead and hear argument in the first case. Romero-Millan v. Barr. May it please the court, Gabriel Lebe for the petitioner Jorge Romero-Millan. The only issue in this case is whether or not Arizona revised statute 133415 for drug paraphernalia is a divisible statute and whether or not it qualifies as a controlled substance offense under the INA. It does not. Mainly on the face of the statute it says a drug. It's a generally worded statute and it has its own definition for a drug within the statute under 3415 F which says if context otherwise requires a drug means any of dangerous drugs, narcotic drugs, peyote or marijuana. The word any should be given its regular meaning and this case is akin to via v. Sencio which the government cited but didn't elaborate on. In that case the Nevada statute says any drug and then they also considered unpublished decisions to state that the jury did not have to be unanimous on the via v. Sencio and actually it's stronger. The agency relied on state v. Castro to determine what the elements of the crime are. State v. Castro divided it into three elements and in the third element they have all the ingest, repack and and the types of use and it says at the end an illegal drug. It's very important that in state v. Castro they contrast that to the transportation of marijuana statute and under that one they break it into four elements and the drug marijuana gets its own element. If state v. Castro wanted to say that naming the drug was an element they would have made the element number four illegal drug but they didn't do that. It's all placed into one big element under element number three. So the statute on its face means that it's indivisible. The other things that we look at in the statute are all of the instructions about considering circumstantial evidence. So if you have a drug paraphernalia and it's in proximity to drugs that's good enough. If there's instructions on how to use it for drugs that's good enough. It's also in the statute the word drug and drugs is used interchangeably throughout the entire statute. Counsel doesn't the pattern jury instruction for this particular statute have a blank for paren name of drug Thank you for bringing up this the jury instructions. There is parentheses there that says name the drug but there's no specific instruction that says that the drug in fact has to be one or another. They contrast that to other jury instructions for 3408 or 3405. They instruct the jury that you must in fact find that the drug is marijuana. You must in fact find that the drug is a narcotic drug. Within these jury instructions they don't do that. Also the jury instructions are not the law. It's just a guide for the court to go on. The other thing that undermines that is State v. Lodge. In that case the facts were that there were 14 pieces of drug paraphernalia in proximity to marijuana and methamphetamine. Lodge challenged the entire thing as duplicitous basically saying look at all these different paraphernalias you can't do this to me and in the end they said it doesn't matter as long as it's related to any kind of drugs even if there's multiple drugs and multiple paraphernalias it can sustain one conviction. So in that they upheld a conviction for one count of drug paraphernalia that included various drug paraphernalias for use of both marijuana and methamphetamine and they were not concerned whether or not the jury had to agree on one drug or another which is consistent with the statute. Finally the only other argument that the government looks to in unpublished decisions in Arizona is State v. Martinez. They try and state that there that there's one drug paraphernalia for two drugs. I believe it was heroin and methamphetamine and they're saying that sustained two counts of drug paraphernalia but that's not what the case states. That case is all about the admissibility of the person who analyzed the drugs and in fact there were four drug counts in there. There was a possession of heroin, the possession of methamphetamine and two counts of possession of drug paraphernalia. The court doesn't specify what the evidence was used for whether it was used for one drug paraphernalia conviction or two and it doesn't specify if the other count of drug paraphernalia included a different type of drug paraphernalia other than the actual scale. It could have been a pipe or whatever. So they're not specific in that case about what it is and State v. Lodge is actually closer to the point so it's more persuasive than the cases they cite. The government has also cited a long list of cases to try and state that the drug has to be tied to the paraphernalia or you could get multiple convictions but a review of those cases don't really show that they're on point. The various cases show different types of paraphernalia for each of the counts so it's really related to the drug paraphernalia. They've also argued that you can get different penalties based on the drug and they cite 13-901.01H4 and in there it relates to marijuana but it has no specific tie to 3415. In 3415 it only says that any type of drug paraphernalia will be a class 6 felony. In Mathis they penalties and they say does the maximum penalty change based on the type of offense. In this case no. Even if it's methamphetamine it remains a class 6 felony. The maximum penalty stays the same. It only affects whether or not how the court considers probation. It says no mandatory probation but then it says the judge can still give you probation. So it actually doesn't change anything. Contrast that with the type of statute that I think Mathis is considering is like Arizona assault which is 13-1203A1. Under A1 there's three mens rea. Two of them result in a misdemeanor one which is a higher misdemeanor for intentionally or knowingly causing physical injury. But if you do it recklessly then it's a misdemeanor two which is a lower offense. So I think that's what Mathis is considering in finding elements. That's the type of statute that would break down different penalties based on different elements. Finally this case even if the court is not convinced by the state statute, the unpublished cases, or the jury instructions, we take a peek at the actual documents. In these documents we have the indictment, the plea, the sentencing order, and also the plea transcript. The only place where cocaine is named is in the indictment and it says cocaine paraphernalia to ingest used to introduce an illegal drug into the body. So they say it's cocaine paraphernalia but then they keep the generic language in there about a drug. They also don't cite 340120 which actually defines what are the various types of narcotic drugs. They don't put that in there because it's not necessary. The plea agreement, the sentence, and the plea transcript don't cite 340120 and don't say the word cocaine. Just generally when the nowhere on that piece of paper does it say cocaine. Finally under Mathis they say elements are things that the plea must necessitate that they actually admit. In this plea transcript they say that it was a snorting pipe used for the ingestion of narcotic drugs. All the other elements are there and they use the word narcotic drugs in the plural. He actually pled to a broader term than the asked the prosecutor is everything okay anything else you'd like to add. At that point the prosecutor should have stepped in if the drug needed to be named. Instead the prosecutor says no everything looks good. Even then after that said well okay we'll accept the plea here and then later we'll do sentencing. So based on all of the factors that are supposed to be considered under Mathis all of those factors weigh in favor of the petitioner. In the end even if it's not clear the government hasn't met their burden and Taylor demands certainty about whether a case is divisible or not or a statute is. If the court is still not clear it must find in favor of the petitioner because under Cepollino v. Gonzalez an inconclusive record is going to be good enough to show that he is admissible and not subject to that type of inadmissibility. So all of the factors weigh in favor of the petitioner and thank you. Before you leave let me ask you when we deal with the categorical approach I frequently feel like a bit of the Twilight Zone but I want to ask is there any logic behind the result that you're advocating? I mean in the particulars of this case is there any real doubt as to what narcotic drug was involved? It doesn't matter and I understand it doesn't matter but is there any real doubt? Go ahead and answer the question no there's no doubt before you explain why it doesn't matter but I think there is no doubt. Will you acknowledge there is no doubt as to what drug was involved here? Right and he pledged that count. So is there any logic if we know that the drug involved was not and I will mispronounce these benzoyl fentanyl and phenyl fentanyl the two substances that make the Arizona list not a match with the federal list. Are those even snorting drugs? I mean could the paraphernalia involved here have been ever used in connection with those substances? I think the practical effect here is the conservative nature of the categorical approach that the Supreme Court has imposed. The state is very aggressive about getting convictions for drug paraphernalia and that's why they've generally worded this statute to just say drugs. It makes it easy on the jury and the judge to just say oh we're not sure about which drug that's what we're going to convict on. But the Congress has specifically says it has to be a drug as defined under the federal law. They don't want somebody to be deported based on a lower standard where the federal law is going to require that it actually prove the specific drug and that it falls under the Controlled Substances Act. So I think it's protected. Is there any real doubt that Congress wants someone to have been deported if that person had been convicted of exactly the same offense only with the statute that specified that it had to be cocaine or had to be something that's a match for the federal statute? Well there's competing interests. They do want that but they also want the person to have a fair process and a due process. So that's why both of those things have to interplay for it to work. Now a lot of times what Congress writes doesn't make much sense and it's not fair but that's a test that Mathis and Deskamps has come out and applying that test it still weighs in favor of the applicant who is just asking for the chance to apply for the green card. In the end Congress still laid out for the judge to say in my discretion even though you're eligible you did all of these bad things I'm going to decide whether or not you're a person deserving. So Congress still has another latch to decide whether or not somebody who is engaged in criminal conduct but is not disqualified can still say you're not deserving. Thank you. We'll reserve your time okay. Thank you. Good morning your honors and may it please the court. Imran Zaidi for the Attorney General. I'd like to start by clarifying the lineup of immigration cases before the court this morning. As you know to Judge Owens there is a full slate of divisibility issues relating to Arizona's drug laws. The first case, this case, which I'll be presenting involves Arizona's drug paraphernalia law section 3415. The second two cases both address Arizona's narcotic possession for sale law section 3408. My colleague David Shore will argue the first of those two cases and then I will return to argue the second of those cases and I assure you we will avoid any bonus points in doing that your honor. Starting with drug paraphernalia in section 3415 we think all of the math is factors here. The statutory scheme, state case law, jury instructions, and a peek at the conviction records weighed decisively in favor of divisibility. If you start with the statutory scheme Arizona's sentencing guidelines prescribe a different and higher penalty for those possession and use offenses that involve methamphetamine. Now we know from Mathis that if statutory alternatives carry different punishments then under Apprendi they must be treated as elements. And to opposing counsel's point just now about how under the meth enhancement in this statute you if your crime involves meth then you will no longer be eligible for it as a mandatory matter but then you still can receive it as a discretionary matter so that it doesn't actually change the penalty. What he leaves out is that the way that that enhancement actually works is that your maximum possible penalty for a first or second offense that's not violent is probation. This is part of a diversionary program in Arizona under Prop 200. The maximum penalty for such an offense would have been probation, no prison time. If that offense involves methamphetamine then immediately your much involved prison time. And so there's no question that it affected the maximum penalty and then under Apprendi can be treated as an element. Didn't the Arizona Court of Appeals in Lodge find that jurors could convict for this statute even if one thought it was one drug and another thought it was another drug? No your honor they didn't and in Lodge's frankly Lodge just doesn't shed any light on the divisibility question in this case and that's because the only thing at issue in Lodge, the only defense raised by the defendant was whether or not the drugs in fact belonged to him, belonged to her I believe. There was discussion of duplicitous charges and that's I think what you're getting at that there was some complaint that perhaps a jury could half of the jury could believe that one thing was at issue and half the jury could believe another was at issue. That was specific to drug paraphernalia. If you look near the end of that case there's specific discussion of what defendant had said with respect to the duplicitous charge argument and it was that half of the jury might believe that one piece of drug paraphernalia was involved and half of the jury could believe that another was involved. And so petitioners reading of that case is simply not consistent with its own text. It's also not consistent with three of the cases that we cite in our brief. Stevens, Kelly, and Stifel all say the exact opposite of what he read that case is suggesting which is that a jury all those cases stand for the needed to agree unanimously on the specific drug substance in a paraphernalia offense. Now in Arizona law I think the case that sort of speaks most clearly to divisibility here and it's a case that opposing counsel mentioned is State v. Martinez. In State v. Martinez contrary to what petitioner just said there was one piece of paraphernalia that could even have related to the two substances mentioned which were heroin and methamphetamine. So there is one piece of drug paraphernalia weight scale and the court sustained two convictions based on that one piece of paraphernalia because it involved two separate substances. Now this confirms and this is consistent with exactly what this court relied on in Martinez-Lopez. One simultaneous criminal act involving multiple substances yielding multiple convictions. That's exactly what State v. Martinez stands for because it again had just one piece of drug paraphernalia, two different substances. That's what this court relied on in saying that California's drug schedules were divisible. Counsel do you think it's possible that we could consistently agree with you with regard to the drug paraphernalia case but disagree with you with regard to the other two cases? Your Honor the divisibility analysis for paraphernalia versus narcotic possession statute is certainly different in the scheme, different jury instructions, different state case law relating to those two statutes. I think practically speaking they're going to be fairly similar. You're looking at the intent of the legislature and how they wanted these crimes to be proven. So the government's overall candid view is we pretty much have to go one way or the other on all three? No, Your Honor. I don't think that the cases stand or fall together but it just certainly is the case that the way we argue both of these cases and we believe the way that the evidence comes out in terms of the Mathis factors, there's no question that they satisfy the way divisibility is to be interpreted, especially the way that this court ruled in Martinez-Lopez. So yes, to your question very quickly, I think the court could come out both ways but it's probably unlikely that it would. One other way in which Arizona case law supports Beyond State v. Martinez, which we think speaks very clearly to divisibility in the exact same way that Martinez-Lopez does, is just on a broader level, paraphernalia statutes make clear that the drug paraphernalia themselves are not necessarily bad. There's nothing unlawful per se about having you just look at the drug paraphernalia definition. It involves household items, blenders, bowls, spoons. What makes those things bad, what makes them criminal, is them being tied to a specific substance. And if you look at the cases we cited at State v. Estrada, State v. Peasley, they speak very much to that principle. In fact, some of the drug paraphernalia definitions specifically contemplate paraphernalia in the context of a specific drug, not just drugs in general. So there's spoons for cocaine, there's some types of filters for hashish, and then there's a few different paraphernalia that are defined specific to marijuana. Now, all of what we have just said, your honors, is consistent with the jury instructions for Arizona, which we think speak perhaps most clearly to divisibility here. Because in three different respects, Arizona's jury instructions establish that you must name the specific substance in a drug paraphernalia offense. So first, the overall instruction, and this is 34.15 of Arizona's revised jury instructions. 34.15, the overall instruction says you must insert the name of drug. In the singular, identify the drug, which is exactly what this court cited in Martinez-Lopez. Now, the definition for drug paraphernalia as part of that very same instruction says the very same thing, must insert name of drug in parentheses for a drug paraphernalia offense. And then the last way in which it supports divisibility is that the use note for this jury instruction specifically says that items in bracketed material can be applied as appropriate, suggesting that there's some discretion in how you might look at the case and then circle or fill in items inside the brackets. The name of drug that needs to be specified is not in brackets, it's in parentheses. There's no suggestion, there's no indication that there's any discretion as to how those parentheses can be filled out. It needs to be filled out and the drug is always indicated there. So one of the problems with the drug paraphernalia charges, as you just noted, is that most of the items are themselves innocuous. They're basic household items and so there's a need to indicate that the use of the item was with a substance that's unlawful. So there's going to need to be identification of an unlawful substance and I would suspect in 99 plus percent of the cases there's not much dispute about what the drug might be. And so it someplace you have to specify the drug or get the jury to acknowledge and agree that there was an unlawful substance there and since the identity of that substance is rarely in dispute, it strikes me as a logical thing to do. But if you could get a conviction without the jury actually having to agree unanimously that it was cocaine as opposed to heroin, is that really an unlawful crime? If that were true, Your Honor, then no it would not. But I don't think that is the case. I think you're right, practically speaking, because there's not going to be dispute as to what the actual substance was. Many of these cases might not suggest or even be relevant to the question of divisibility. But there's no question that if jury instructions listed a certain drug, again even the way that you're describing, just practically speaking, you would need to identify to see how it ties to the paraphernalia there. If the jury did not unanimously agree that that was the drug that was used or that was utilized somehow in connection with the paraphernalia, then it would not sustain the offense. And again that's where State v. Martinez is very clear on this. You have one paraphernalia and you have two separate substances and the court sustained those convictions in the exact same way that Martinez Lopez relied on that in the California Supreme Court. Now the peak, I think we also believe looking at the conviction records here, you look at the charging document here, there's no question the charging document identifies cocaine to the exclusion of other substances. So that's the sort of last way in which we think divisibility is very clear here. I want to very quickly address the sufficiency of the record for the separate question of whether once found divisible under the modified categorical approach, this record supports that this conviction involved cocaine. Petitioners suggest that the plea agreement here might somehow have altered the actual count that he was pleading guilty to. And he cites this paragraph in the plea agreement that says the plea agreement can itself amend the charges. That's true and it's boilerplate language. Plea agreements often can. What this plea agreement language is stating is that the State, if it wants to amend a charge or add a charge, does not need to file a separate charging document. If it is going to amend the actual count through the plea agreement, it is explicit. It will say on the first page, this is an amended, this is an amended count. It would not be done sort of sub silencio the way the petitioner suggests. So there's no basis for his argument that he did not in fact plead to a drug paraphernalia offense involving cocaine. And if there's no further questions, Your Honor, we ask that the petition be denied. Thank you very much. Thank you. You got about three minutes. Thank you. Martinez-Lopez doesn't really apply here because in that case, they specifically found there's a definitive answer in the California law that was already a published decision. Here we don't have that. So Martinez-Lopez was pretty much based on that even though they conducted other analysis. I still think that the government is misreading State v. Martinez because it doesn't say that that evidence was directly tied to any specific drug paraphernalia conviction as there were two separate ones and also two other convictions for drugs. So it could have been for any of those counts. Finally, the government wanted to remand this case based on Lopez-Clemente, which is a BIA case that was found that 3415 is indivisible and overbroad by a three-member panel of the BIA. They try and say in their remand, we're not admitting any error. We just want to reconsider. But how do they get around the fact that they're arguing out of both sides of their mouth? In fairness, some people will go to the BIA and they find that it's indivisible. You get to apply. But for some reason, my client has to come to the Ninth Circuit and say it's indivisible. We don't defer to the BIA on interpretation of state statutes. So I'm not sure why this is something that you're suggesting we ought to defer in this case. Or it may be that the BIA, if it hears from us, that nope, we think the Arizona statute is divisible. I suspect the BIA will pretty quickly fall into line in response, at least for cases within the Ninth Circuit in response. So I hear your point, but I'm not sure what significance we should draw from it. Okay, well I think the way the Ninth Circuit has done the analysis and other unpublished cases, Vera Valdez, Madrid Farfan, and also Yepes, they're basically applying it in this way to Arizona statutes. And they are relying on unpublished cases to find that the jury doesn't have to agree. And all of the, it it's a correct application of the law to these statutes. In the end, they alleged a narcotic drug. So even if you can go behind into those four different designations under the law, under narcotic drug, that is an indivisible umbrella term. So in the end, they still cannot prove the specific drug. So I think all of those things taken together are more persuasive than this whatever the government has cited in their unpublished decisions. Thank you.
judges: Clifton, Owens, Bennett